Elizabeth A. Shaffer (6796)

1960 Sidewinder Drive, #213

Park City Utah, 84098

Telephone (435) 655-3033

Fax (435) 655-3233

Email: eshaffer@lawparkcity.com

*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **RICHARD DOUGLAS HACKFORD,**<br><br>Plaintiff,<br><br>vs.<br><br>**THE STATE OF UTAH**, **GARY HERBERT**, in his capacity as Governor of Utah, **SEAN D. REYES**, in his capacity as Attorney General of Utah, **UINTAH COUNTY**, **G. MARK THOMAS**, in his capacity as County Attorney for Uintah County, and **LOREN ANDERSON**, in his capacity as Deputy County Attorney Uintah County,<br><br>Defendants. | **COMPLAINT FOR DECLARATORY JUDGEMENT AND INJUNCTIVE RELIEF**<br><br>Case Number:   2:18-cv-00631-CW<br><br>Judge Clark Waddoups |

COMES NOW, Plaintiff Richard D. Hackford, by and through his attorney,

Elizabeth A. Shaffer, and for his complaint against the Defendants, alleges as follows.

## NATURE OF PROCEEDING

1.     This is a Declaratory Judgment action pursuant to 28 U.S.C. §§ 2201 and 2202 and injunctive relief to prohibit and enjoin the Defendants' criminal prosecution of the Plaintiff as a matter of federal law.

## JURISDICTION, VENUE, AND PARTIES

2.     This Court has jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 2201, and 2202.

3.     District courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.

4.     This Court's exercise of personal jurisdiction over Defendant is consistent with the Constitutions of the United States and the State of Utah.

5.     Venue is proper in this district pursuant to at least 28 U.S.C. § 1391(b).

6.     A Declaratory Judgment action requires "a justiciable controversy based upon an accrued set of facts, an actual conflict, adverse parties, a legally protectible interest on the plaintiff's part, and an issue ripe for judicial resolution." *Barnard v. Utah State Bar*, 857 P.2d 917, 919 (Utah 1993) (citation omitted).

## FACTUAL BACKGROUND

7.    Mr. Hackford was stopped in "Indian Country" by the Uintah County Sheriff and charged with a speeding violation, a Class C Misdemeanor, in violation of Utah Code Ann. §41-6a-601.

8.    When stopped, Mr. Hackford advised the Uintah County Sheriff that he was a Native American.

9.    The officer cited Mr. Hackford, and Uintah County, a political subdivision of the State of Utah, is prosecuting Mr. Hackford for alleged criminal conduct by an Indian on Reservation lands.

10.    Mr. Hackford's alleged crime occurred at or about 1000 North 1500 East, Ballard, Uintah County, Utah 84066.

11.    The alleged offense occurred within the original boundaries of the Uintah Indian Reservation and within "Indian Country" pursuant to 18 U.S.C. § 1151.

12.    Mr. Hackford is an Indian residing on Indian reservation land and the alleged crime occurred in Indian Country. As a result, the State of Utah does not have criminal jurisdiction over him and the alleged crime.

3

13. The State of Utah, through its political subdivision, Uintah County, stipulated that the alleged offense occurred in Indian Country. This stipulation was filed with the Court. Based on the stipulation, Indian Country is not contested in the original matter.

14. Richard D. Hackford is a Native American, descendant of the aboriginal Utah Indians also known as the "Uinta Band" having an original Roll Number of 552.

15. Mr. Hackford is a recognized Indian identified on the Federal Register as a "Mixed-Blood"[1] Ute Indian, Role Number 142 and member of the Affiliated Ute Citizens under the Ute Partition Act of 1954. (U.S. Code § 677).

16. The Reservation lands were granted to the Utah Indians pursuant to the Treaty of 1861, these lands became known as the Uinta Valley Reservation.

## FIRST CAUSE OF ACTION
### (Mr. Hackford's status as an Indian)

17. The question of Mr. Hackford's status as an Indian is a question for the Federal Court.

---

[1] Mr. Hackford does not acquiesce in the designation "mixed-blood".   The term is used herein in order to be consistent with the reference in the Ute Partition Act.

4

18.   Exclusive federal criminal jurisdiction over Indians in 'Indian country' includes all persons found to be "Indian" under federal law, notwithstanding specific tribal membership or lack thereof.

19.   The Ute Partition Act (UPA) termination of mixed bloods from Ute tribal membership did not *ipso facto* negate their status as Indians for purpose of criminal jurisdiction.

20.   Membership in an officially-recognized tribe is not dispositive of the issue Indian status. *United States v. Antelope,* 430 U.S. 641, 647 n. 7, 97 S.Ct. 1395, 1399 n. 7, 51 L.Ed.2d 701 (1977) ("enrollment in an official tribe has not been held to be an absolute requirement for federal jurisdiction, at least where the Indian defendant lived on the reservation and maintained tribal relations with the Indians thereon."). See *United States v. Rogers,* 45 U.S. (4 How.) 567, 11 L.Ed. 1105 (1846) (interpreting a predecessor of § 1152, the Supreme Court held that the defendant's affiliation with a tribe generally and did not require membership in a federally recognized tribe).

21.   Mr. Hackford possesses Indian blood and by virtue of his retained tribal assets, is recognized by the federal government as an Indian.

22.   Mr. Hackford maintains tribal relations and is evidence of his status as an Indian. Membership in AUC and its affiliation and Tribal relations with the Ute Indian Tribe in the joint management of tribal assets is further evidence of Mr. Hackford's status as an Indian.

23.   Federal civil statutes in Title 25 of the U.S. Code acknowledge "Indian" in a manner indicating that it is a special constitutionally-countenanced racial classification. *Hackford v. Babbitt*, 14 F.3d 1457, 1462 (10th Cir. 1994).

24.   Mr. Hackford has been recognized as an Indian by federal and state governments, as well as the Ute Tribe, as an Indian of Mixed-Blood entitled to tribal rights and tribal assets.

25.   Mr. Hackford and his father were members of the Ute Indian Tribe. His mother was a member of the Sioux Indian Tribe, also a federally recognized tribe.

26.   Mr. Hackford resides on tribal land, within the boundaries of the Uintah and Ouray Indian Reservation, where he has lived his entire life.

27.   Mr. Hackford is also a member of the Affiliated Ute Citizens ("AUC") and as such, is affiliated with and recognized by the Ute Tribe, a federally recognized tribe.

28.   Mr. Hackford owns tribal mineral rights, in alliance with the Ute Tribe, and
such tribal property is held in trust by the United States government; specifically, he is a
shareholder in the Ute Distribution Corporation and receives distributions from tribal
assets, including oil, gas, and mineral rights derived from the tribal lands of the Uintah
Valley Indian Reservation.

29.   These mineral rights are assets of Indian lands granted to the Utah Indians
stemming from the treaty rights of 1861. These assets continue to be held in trust by the
federal government for the benefit of those Indians and beneficiaries of the Treaty.

30.   Mr. Hackford's proceeds from the distributions associated with tribal
mineral rights are not subject to income tax from the State of Utah.

31.   Mr. Hackford's income and retirement funds received from his employer, El
Paso Production Company, resulting from earnings on reservation lands are also not
subject to income tax by the State of Utah.

32.   The trust relationship with the U.S. Government and the tax benefits
received from the State of Utah are awarded only to recognized Indians.

33.   Ownership of trust property and receipt of state tax benefits both identify Mr.
Hackford's government recognition as an Indian. Further, his membership in the

7

Affiliated Ute Citizens organization acknowledges his connection with the Ute Indian Tribe, a federally recognized tribe.

34.    The U.S. Code defines the term "Indian" as:

any individual who, irrespective of whether he or she lives on or near a reservation, is a member of a tribe, band, or other organized group of Indians, *including those tribes, bands, or groups terminated since 1940* and those recognized now or in the future by the State in which they reside, or who is a descendant, in the first or second degree, of any such member. 25 U.S.C. §1603 (13)(A).

35.    There is no statutory definition of Indian for criminal jurisdiction.

36.    Mr. Hackford sufficiently shows his status as an Indian.

37.    Mr. Hackford is an Indian and is not subject to state jurisdiction.

## SECOND CAUSE OF ACTION
### (Jurisdiction is a treaty right that was not terminated)

38.    Mr. Hackford has an aboriginal and/or tribal right to federal court jurisdiction, notwithstanding termination from the tribe by the Ute Partition Act.

39.    "Tribes retain sovereign interests in activities that occur on land owned and controlled by the tribe." *Nevada v. Hicks*, 533 U.S. 353, 392, 121 S. Ct. 2304, 150 L. Ed. 2d 398 (2001) (O'Connor, J., concurring in part and concurring in judgment).

40.    The Supreme Court has held that "the hunting and fishing rights of Indians on allotments and on tribal trust lands survive disestablishment of an Indian reservation, and, because the land remains in Indian Country status, they are not subject to state regulation." *United States v. Felter,* 752 F.2d 1505, 1510 (10th Cir. 1985) citing *Cheyenne-Arapaho Tribes of Oklahoma v. Oklahoma,* 618 F.2d 665, 669 (10th Cir. 1980) ("Menominee Tribe and its progeny reflect the Court's reluctance to impute congressional intent to abrogate Indian rights to hunt and fish, absent explicit language to the effect.")

41.    Similar to hunting and fishing rights, which are treaty rights, jurisdiction pertains to the sovereignty of the tribal organization.

42.    There has been no explicit intent by Congress to abrogate this right.

43.    Congress recognized the Mixed-Bloods and their organization, Affiliated Ute Citizens, to manage tribal assets in conjunction with the Ute Tribe. They retain this Indian status for jurisdiction purposes.

44.    Mr. Hackford enjoys the benefits of tribal affiliation.

45.    Defendant has gained social recognition as an Indian through residence on the Uintah Valley Reservation and participation in Indian social life.

46.   The Mixed-Bloods retain their federal Indian status regarding jurisdiction and treaty rights.

47.   Mr. Hackford has standing to assert a tribal right.

48.   Rights under the treaties are vested with the tribes at the time of the signing of the treaties.

49.   Enrollment in a federally recognized tribe has no impact on vested treaty rights.

50.   The UPA did not terminate the federal Indian status of the entire Ute Indian Tribe.

51.   The UPA divided the Tribe into two groups—Mixed-Bloods and Full-Bloods—and terminated membership in the Ute Tribe only as to the Mixed-Blood members. The characterization as a "Mixed-Blood" was created solely for the purpose of the Ute Partition Act and identifies those certain persons that were members of the Uintah Band of the aboriginal Utah Indians.

52.   Although Congress terminated its federal supervision of the Mixed-Bloods with respect to partitioned and distributed assets and certain federal benefits, it retained its trust relationship with the Mixed-Bloods as to the indivisible assets of the tribe.

53.    Mr. Hackford's tribal assets are controlled by the Affiliated Ute Citizens in conjunction with the Ute Tribe, held in trust by the federal government, and thus further evidence his Indian status.

54.    The effects of the Ute Partition Act were not absolute.

55.    Jurisdiction is a treaty right, which is enjoyed by Mr. Hackford.

## WRIT OF PROHIBITORY INJUNCTION

56.       Mr. Hackford realleges and incorporates by reference the prior paragraphs.

57.    To obtain a permanent injunction a party must prove: (1) actual success on the merits, (2) irreparable harm unless the injunction is issued, (3) the threatened injury outweighs the harm that the injunction may cause the opposing party, and (4) that the injunction, if issued, will not adversely affect the public interest. *Prairie Band Potawatomi Nation v. Wagon*, 476 F. 3d 818, 822 (10th Cir. 2007).

58.    Richard D. Hackford will prevail on the merits because the State Defendants lack criminal jurisdiction over his case.

59.   If the State's prosecution of Mr. Hackford is not enjoined, he will suffer irreparable injury by unlawful deprivations of jurisdictional sovereignty.

60.   The Tenth Circuit has "repeatedly stated" that enforcing state criminal jurisdiction on Indian land is an "invasion of tribal sovereignty" constituting irreparable injury. *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1255-56 (10th Cir. 2006). State encroachments on tribal sovereignty constitute an irreparable injury because the harm to tribal self- government is "not easily subject to valuation," and because "monetary relief might not be available because of the state's sovereign immunity." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F .3d 1234, 1250 (10th Cir. 2001); see also *Choctaw Nation of Oklahoma v. State of Oklahoma*, 724 F. Supp. 2d 1182, 1187 (W.D Okla. 2010) (remedies at law are inadequate to remedy illegal assertions of state jurisdiction in Indian Country); *Winnebago Tribe of Nebraska v. Stovall*, 205 F. Supp. 2d 1217, caused by illegal seizures of property and encroachments on tribal sovereignty).

61.   The public interest and the balance of equities require that the State Defendants' prosecution of Richard D. Hackford be enjoined. See e.g., *United Keetoowah Band of Cherokee Indians v. State of Oklahoma*, 927 F. 2d 1170, 1182 (10th

12

Cir. 1991) (affirming a permanent injunction enjoining the Tulsa County District Attorney from exercising criminal jurisdiction over a single Indian allotment in Tulsa county).

62.    The State Defendants have previously been enjoined and prohibited from proceeding with the criminal prosecution of another Native American, Lesa Ann Jenkins for misdemeanor traffic offenses on land allegedly within the National Forest lands of the *Uintah Valley Reservation. Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000, 1005 (10th Cir. 2015) ("…the harm to tribal sovereignty in this case is perhaps as serious as any to come our way in a long time. Not only is the prosecution of Ms. Jenkins itself an infringement on tribal sovereignty, but the tortured litigation history that supplies its backdrop strongly suggests it is part of a renewed campaign to undo the tribal boundaries settled by Ute III and V.").

## PRAYER FOR RELIEF

Based upon the allegations above, Richard D. Hackford prays that the Court:

1.    Declare that the Federal Court is the proper court to determine the question of the Indian status of Mr. Hackford in the instant case.

2.      Declare that the Mr. Hackford is an Indian for purpose of federal jurisdiction.

3.      Declare that the Federal Court is the proper court for jurisdiction.

4.      Enjoin the Defendants from:

a)      Prosecuting Richard D. Hackford, in State of Utah v. Richard D. Hackford, Uintah County Vernal District Court, Case No 175800035.

5.      Provide such other relief as the Court determines is appropriate.

DATED this 10th day of August, 2018.

/s/ Elizabeth A. Shaffer
Elizabeth A. Shaffer (6796)
1960 Sidewinder Drive, #213
Park City Utah, 84060
Telephone (435) 655-3033
Fax (435) 655-3233
Email: eshaffer@lawparkcity.com
Attorney for Mr. Hackford